UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-23599-CIV-HUCK/O'SULLIVAN

CYNTHIA BLUE, as mother and natural
guardian of M.S.,

    Plaintiff,

v.

MIAMI-DADE COUNTY, FLORIDA
and JEAN DORVIL, Individually

    Defendants.
_____/

## ORDER

Plaintiff has filed an Amended Complaint (D.E. # 18) pursuant to 42 U.S.C § 1983 and state law against Miami-Dade County and Jean Dorvil to recover for injuries suffered by her daughter, M.S. This matter is before the Court on Miami-Dade County's Motion to Dismiss Amended Complaint With Prejudice (D.E. # 21) and *pro se* Jean Dorvil's Motion to Dismiss Amended Complaint (D.E. # 22). Both motions have been fully briefed and are ripe for resolution.

I.    **FACTUAL BACKGROUND**[1]

Plaintiff, Cynthia Blue, is the mother and natural guardian of M.S. In November 2007, Blue enrolled M.S. in the Head Start Program of Miami-Dade County ("the County"). Head Start, a federal program established by the Head Start Act 42 U.S.C. § 9801 et seq., aims to enhance the school readiness of low income children through health, educational, nutritional, social and other services.[2]

---

[1] The following facts, taken from Plaintiff's Amended Complaint, are accepted as true for purposes of ruling on Defendants' motions to dismiss.

[2] The County did not raise the issue of whether it or Dorvil acts "under color of state law" with regard to the County's Head Start Program for purposes of § 1983. Thus, the Court presumes that the County and its employees are acting as such with regard to the County's Head Start Program.

Plaintiff alleges that on April 16, 2009, Jean Dorvil, a County Head Start Teacher, kicked then five-year-old M.S. in her mouth and failed to seek medical attention for her injury. Plaintiff alleges that she previously advised the County Head Start Program that her daughter had issues using the restroom. On the date of the incident, M.S. allegedly requested to use the restroom during naptime, and Dorvil refused her requests. M.S. used the restroom anyhow, and upon her return, Dorvil allegedly kicked her in the mouth while she was on her nap cot and told her to put a sheet over her head. Plaintiff alleges that Dorvil caused a laceration to M.S.'s lip that bled profusely, and despite this injury, Dorvil did not seek medical care for M.S. and did not contact his supervisor or M.S.'s mother. Ultimately, the Director of the relevant Head Start Center investigated the incident, and in May 2009, the County terminated Dorvil's employment.

Dorvil began working as a Head Start teacher in 1982. The Amended Complaint alleges that prior to the incident involving M.S., Dorvil was, at various times, not in compliance with Head Start regulations regarding teaching qualifications. Plaintiff supports this allegation with performance evaluations, disciplinary reports and other documents from over the course of Dorvil's 27-year employment with the County that memorialize Dorvil's repeated failure to take the classes required to meet Head Start's teacher educational requirements. Plaintiff also alleges that Dorvil violated Head Start policies in other ways and supports this allegation with documents and correspondence of the County and the Miami-Dade County Community Action Agency ("CAA"), the entity that Plaintiff alleges operates the County's Head Start Program. These documents indicate that Dorvil was reprimanded for creating various safety hazards in his classroom (storing paint, tricycles and out-dated materials in unsafe ways), sleeping during the children's naptime, failing to properly supervise children and failing to submit required paperwork.

In addition to the incident involving M.S., the Amended Complaint details one other incident of alleged physical abuse involving Dorvil. Allegedly, on March 29, 2009, when McQueen, Dorvil's teaching assistant, asked a crying child what was wrong, a child next to the crying child said, "you better lay down before Mr. Dorvil kick you in your head too." McQueen's recollection regarding this incident is memorialized in statement signed by her on April 29, 2009 and attached to the Amended Complaint. Even though McQueen failed to report this incident to the proper authorities, Plaintiff alleges that the CAA knew or should have known that Dorvil was physically intimidating

children and administering corporal punishment.  Plaintiff's Amended Complaint also alleges, and substantiates with a "Record of Counseling," that in 2002 a student in Dorvil's care sustained a bloody injury to her mouth and Dovil failed to follow Head Start procedures for the student's injuries.

On the basis of these allegations, the Amended Complaint asserts three claims against Dorvil under 42 U.S.C § 1983 and five claims against the County: one under § 1983 for deliberate indifference, another under § 1983 for failure to train and supervise and various claims under Florida law.  Individual Defendant Dovil, proceeding *pro se*, moves to dismiss the Amended Complaint, and as indicated below, his motion is without merit.  The County moves to dismiss all five counts against it, and for the reasons discussed below, the Court grants the County's motion in part.  The Court dismisses Plaintiff's § 1983 claims against the County without prejudice with leave to amend.

II.   **ANALYSIS**

A.   Dorvil's Liability under 42 U.S.C § 1983

Plaintiff's § 1983 claims against Dorvil are for corporal punishment in violation of the Head Start Act (Count I), excessive force in violation of the Fourteenth Amendment (Count II), and deliberate indifference in violation of the Fourteenth Amendment (Count III).  In his motion to dismiss, Dorvil argues only that Plaintiff's allegations "have [not] proven to be true;" the County dismissed and/or declined to prosecute the state child abuse charges against him for lack of proof; Plaintiff has not described physical damages to M.S. requiring medical treatment; and Dorvil's teaching assistant did not actually see him kick M.S.  Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), he asserts, Plaintiff's uncorroborated and implausible allegations of physical injury to M.S. are insufficient.  Dorvil misunderstands the *Twombly* standard.  To survive a motion to dismiss, a complaint must set forth sufficient factual matter to state a claim that is facially plausible, and a claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  Here, Plaintiff's Amended Complaint easily clears this hurdle.  It alleges that Dorvil kicked M.S. in the mouth, attaches a statement from Dorvil's teaching assistant indicating that she saw M.S. with a bloody lip minutes after Dorvil swung his leg in her direction and a statement from the Head Start Center Director indicating that M.S. told the Director that Dorvil

kicked her. Therefore, the Court denies Dorvil's motion to dismiss.

  B.  <u>The County's Liability under 42 U.S.C § 1983</u>

Under 42 U.S.C. § 1983, any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia" is liable if the person deprives a United States citizen or person within its jurisdiction of his or her rights, privileges, or immunities secured by the Constitution and laws. Municipalities can be sued under § 1983 although they cannot be held liable based on a theory of *respondeat superior*. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690–92 (1978). "[A] plaintiff seeking to impose liability on a municipality under § 1983 [must] identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Eleventh Circuit case law establishes that a municipal policy or custom may be (1) "an official government policy," (2) "the actions of an official fairly deemed to represent government policy," in other words, a final policymaker, or (3) "a custom or practice so pervasive and well-settled that it assumes the force of law." *Doe v. School Bd. of Broward County*, 604 F.3d 1248, 1263 (11th Cir. 2010) (internal quotations omitted); *see also Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1480–81(11th Cir. 1991) (separately discussing the final policymaker and unofficial custom approaches to municipal liability and explaining that under the unofficial custom approach, a "long-standing and widespread practice is deemed authorized by the policy-making officials because they must have known about it but failed to stop it.") The County argues that Plaintiff's § 1983 counts against it must be dismissed because the CAA is not a "final policymaker" for the County, nor was it delegated such authority by the County. As discussed below, the Court agrees. Alternatively, the Court finds that Plaintiff does not state a facially plausible claim under § 1983 for the County's alleged deliberate indifference or failure to train and supervise.

    1.  Final Policymaking Authority for the County's Head Start Program

 The issue of who possesses final policymaking authority is a question of law for the judge to decide. *Buzzi v. Gomez*, 62 F. Supp. 2d 1344, 1358 (S.D. Fla. 1999) (citing *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989)). "[I]dentification of policymaking officials is a question of state law," and "a federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *City*

*of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 126 (1988) (plurality opinion). By reviewing the relevant state and local laws as well as custom or usages having the force of law "the trial judge must identify those officials or government bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional statutory violation at issue." *Mandel v. Doe,* 888 F.2d 783, 792–93 (11th Cir. 1989) (internal quotation omitted). Moreover, delegation of final policymaking authority does not occur if an official's discretionary decisions are constrained by policies not of that official's making and/or are subject to review by the municipality's authorized policymakers. *Praprotnik*, 485 U.S. at 127; *Mandel v. Doe,* 888 F.2d 783, 792 (11th Cir. 1989). The Court of Appeals for the Eleventh Circuit has stated that "final policymaking authority over a particular subject matter does not vest in an official whose decisions are subject to meaningful administrative review." *Doe v. School Bd of Broward County*, 604 F.3d 1248, 1264 (11th Cir. 2010).

This Court has repeatedly stated that final policymaking authority for Miami-Dade County resides in the Board of County Commissioners or the County Manager.[3] *Rosario v. Miami-Dade County*, 490 F. Supp. 2d 1213, 1222 (S.D. Fla. 2007); *Wilson v. Miami-Dade County*, 04-23250-CIV, 2005 WL 3597737, *8 (S.D. Fla. Oct. 11, 2005) ("This Court has previously recognized that final policymaking authority for Miami-Dade County rests with the Board of County Commissioners or the County Manager."); *Buzzi v. Gomez*, 62 F. Supp. 2d 1344, 1359–60 (S.D. Fla. 1999) (finding that County's Director of Police Services, whose actions were limited by Board of County Commissioners ordinances and subject to review by the Board, was not County's final policymaker). The Miami-Dade Home Rule Charter provides that the Board of County Commissioners is the "legislative and the governing body of the county." Miami-Dade Home Rule Charter § 1.01(A). Moreover, in a 1971 resolution of the Miami-Dade County Board of County Commissioners, the

---

[3] The County argues that a 2006 amendment to the Miami-Dade County Home Rule Charter granted the Mayor the final policymaking authority previously conferred on the County Manager. *See* D.E. # 21 at p. 10–11, n.5. The Court does not address this argument because it is unnecessary to its ruling.

Board designates itself as the permanent Community Action Agency.[4]

Nonetheless, Plaintiff asserts, the Board of County Commissioners delegated final policymaking authority over the County's Head Start Program's non-fiscal matters to the CAA. In support, Plaintiff references a 2008 U.S. Department of Health and Human Resources Report reviewing the "Dade County Board of County Commissioners Head Start and Early Head Start programs." This Report, addressed to the Board of County Commissioners' Chairperson, found that there was an unclear division of responsibilities between the Board of County Commissioners and the CAA Board with regard to the County's Head Start Program. Viewing the Report in the light most favorable to Plaintiff, it indicates that the Board of County Commissioners' Vice Chair stated in an interview that non-fiscal operations for Head Start were delegated to the CAA Board and that the Board of County Commissioners, in the CAA Board by-laws, established the CAA as a policy-making body. Assuming that the Court could use the report as evidence of local law or custom or usage having the force of law, the Court finds that neither this Report nor a 2009 County Memorandum submitted by Plaintiff establishes that the CAA was delegated final policymaking authority as that concept is defined for purposes of § 1983.

While the Report indicates that the CAA (more specifically, the CAA Board) had substantial decision making power regarding the County's Head Start Program it does not, as Eleventh Circuit precedent requires, show that the CAA's actions were unconstrained by the Board of County Commissioners' policies and free from the Board's meaningful administrative review. Indeed, the Report repeatedly assumes that it is the Board of County Commissioners who has the power to delineate the CAA's role and responsibilities vis-à-vis the Head Start Program. A 2009 Memorandum from the County Manager to the Board of County Commissioners indicates that following the Department of Health and Human Resources Report the County passed an ordinance to formalize the role that the CAA Board had been serving since its creation in the 1970s.[5] This

---

[4] The County attached this resolution to its motion to dismiss. The Court takes judicial notice of this resolution and other matters of public record attached to the parties' briefing and referenced above.

[5] This 2009 County Manager Memorandum is attached to Plaintiff's response to the County's motion and the Court properly considers it for purposes of ruling on that motion. *See*

2009 Ordinance (No. 09-31) solidifies that the CAA's actions, specifically its responsibilities for non-fiscal Head Start matters, are subject to the Board of County Commissioners' meaningful administrative review.

The 2009 Ordinance states that the CAA Board will present its governance practices to the Board of County Commissioners as a report, recommend the selection of service areas and delegate agencies for the Board of County Commissioners' final approval, and provide quarterly and annual reports to the Board of County Commissioners regarding various Head Start matters, including program planning, policies and operations. Miami-Dade County Code Art. CXXXII § 2-2048(b). Moreover, the ordinance states that the Board of County Commissioners is the governing body of the County's Head Start Program with legal and fiscal responsibility for overseeing programs under the Head Start Act. *Id.* While this ordinance was passed on May 5, 2009, after the alleged April 2009 incident involving M.S., the Plaintiff's allegations, supported by the Department of Health and Human Resources Report and County Manager Memorandum, do not allow the Court to make the reasonable inference that prior to May 2009, the CAA's actions regarding the Head Start Program were not subject to the Board of County Commissioners' meaningful administrative review and not constrained by Board policies.[6] Therefore, the Court finds that the CAA was not delegated final policymaking authority over the County's Head Start Program. The County cannot be held liable under the final policymaker approach to §1983 municipal liability for the CAA's decisions. Additionally, even assuming that the CAA were the final policymaker, neither Count IV nor Count V, Plaintiff's two § 1983 claims against the County, state a claim upon which relief can be granted.

---

*supra note 4*.

[6] In further support of the Court's conclusion are two additional exhibits attached to the County's motion. They are (1) a 2004 Board of County Commissioners resolution authorizing the County Manager to apply for and expend funds for Head Start Program child meals and snacks and (2) a 2006 Board of County Commissioners resolution directing the County Manager to use the expertise of Head Start staff to create a child behavior and teen parenting skills program.

      2.  Deliberate Indifference Through Policy, Practice or Custom

In Count IV, Plaintiff alleges that the CAA[7] adopted a policy, practice or custom of not enforcing Head Start guidelines and tolerating excessive force and corporal punishment and this policy, practice, or custom amounted to deliberate indifference to the health and safety of the children in its care in violation of the Fourteenth Amendment. Plaintiff has clearly failed to state a claim for the County's unofficial custom or practice of tolerating force or corporal punishment because Plaintiff only alleges one prior incident involving Dorvil or any other Head Start staff and the use of physical force.[8] *See Buzzi v. Gomez*, 62 F. Supp. 2d 1344, 1360 (S.D. Fla. 1999) ("[F]ive incidents which occurred over a three-year period . . . , even if they were predicated on discrimination, are insufficient to substantiate the existence of a widespread custom violative of § 1983.") Plaintiff's other allegations in support of the existence of a custom or practice have nothing to do with using physical force against children and, as such, cannot establish the County's deliberate indifference under § 1983.

To state a claim for deliberate indifference against the County under § 1983, "a plaintiff must show that the county had subjective knowledge of a risk of serious harm and consciously disregarded that risk." *Moore v. Miami-Dade County*, 502 F. Supp. 2d 1224, 1231 (S.D. Fla. 2007) (citing *Cagle v. Sutherland*, 334 F.3d 980, 985 (11th Cir. 2003)). Nothing in Plaintiff's allegations show that the County had knowledge of a risk of serious injury to a child such as M.S. Dorvil's misconduct of which the County allegedly had notice was wholly unrelated to corporal punishment and the use of physical force. While Plaintiff alleges and substantially supports that the CAA knew that Dorvil did not meet Head Start teacher educational standards, kept an unsafe, unsanitary classroom, did not adequately supervise students and failed to provide medical attention for injured students, these

---

[7] While the Defendant is the County, Plaintiff's pleading almost exclusively refers to the CAA. Plaintiff's Counts are styled "Against CAA," state that the CAA had a policy, practice or custom and refer to the CAA's knowledge and actions. The Court assumes that Plaintiff's pleading conflates the CAA and the County. For purposes of the Court's discussion of the Plaintiff's allegations in Count IV and V, the Court assumes that Plaintiff's references to the CAA are references to the County.

[8] This is the incident in which Dorvil's teaching assistant allegedly overhead students discussing Dorvil kicking one of them.

transgressions have nothing to do with the use of force against children. Also, though Plaintiff alleges that Dorvil's teaching assistant heard a student reference Dorvil kicking another child in the head, the Plaintiff indicates that this incident was never reported to "proper authorities."[9] The CAA knew that Dorvil was not a model teacher in many respects; however, there is nothing to show that it knew that he posed a risk of using physical force against children. Therefore, the Court finds that Count IV fails to state a claim upon which relief can be granted.

### 3. Failure to Train and Supervise By Means of Deliberate Indifference

In Count V, Plaintiff alleges that the CAA failed to train and supervise Dorvil despite its knowledge of Dorvil's violation of Head Start policies and was thereby deliberately indifferent to the health and safety of children such as M.S. The Supreme Court has indicated that municipal liability under § 1983 for failure to train or supervise can be established only in limited circumstances and "these limited circumstances occur only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy and that city policy causes the employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 387, 389–91 (1989)). To establish such a failure to train or supervise by means of the defendant's deliberate indifference plaintiff must show, among other things, that the municipality knew of a need to train and/or supervise in a particular area. *Id.* at 1350. The Court of Appeals for the Eleventh Circuit has "repeatedly . . . held that without notice of a need to train and supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Id.* at 1351. In this case, Plaintiff has not alleged that the County was aware of prior incidents of corporal punishment or uses of physical force against students involving Dorvil or any other County Head

---

[9] Even though the Amended Complaint states that Dorvil's teaching assistant failed to report this incident, it, nonetheless, alleges that the CAA knew or should have known that Dorvil was physically intimidating children and administering corporal punishment. The Court will not credit this conclusory allegation that does not bear any factual support. *See Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) ("A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth.")

Start employees.[10]  In Count V, as in Count IV, the Plaintiff alleges a series of problems involving Dorvil of which the CAA was aware; however, these infractions do not involve Dorvil's use of corporal punishment or excessive force on his students.  Without notice of a need to train or supervise in the particular area of the use of physical force and corporal punishment, the County is not liable as a matter of law under § 1983 in this action for any failure to train or supervise.  *See Gold,* 151 F.3d at 1351, 1354 (finding that while plaintiff presented general evidence regarding past police practices, he presented no evidence of prior incidents in which constitutional rights were similarly violated and, as such, defendant was not liable as a matter of law for failure to train or supervise under § 1983).  Therefore, the Court also finds that Count V fails to state a claim upon which relief can be granted.

      C.      The County's Liability Under Florida Law

Plaintiff also brings three claims against the County under Florida law: Count VI for Negligence *Respondeat Superior*, Count VII for Negligent Supervision, and Count VIII for Negligent Retention.  As stated above, Plaintiff's federal § 1983 claims against the County will be dismissed. However, because the Court is granting Plaintiff leave to amend one final time, it will presently reserve ruling on its exercise of supplemental jurisdiction over Plaintiff's state law claims.  *See* 28 U.S.C. § 1367(c)(3).

### III.  **CONCLUSION**

For the reasons discussed above, *pro se* Jean Dorvil's Motion to Dismiss Amended Complaint (D.E. # 22) is DENIED and Miami-Dade County's Motion to Dismiss Amended Complaint With Prejudice (D.E. # 21) is GRANTED IN PART.  Plaintiff's federal law claims

---

[10] As discussed *supra*, Plaintiff alleges that Dorvil's teaching assistant heard a student reference Dorvil kicking another child in the head, although the Plaintiff indicates that this incident was never reported to the authorities.  Therefore, Plaintiff's allegation that the CAA knew or should have known that Dorvil was physically intimidating children and inflicting corporal punishment is an implausible allegation that the Court will not credit as true for purposes of ruling on the County's motion to dismiss.  Also, in her response memorandum, Plaintiff indicates that the 2008 Department of Health and Human Resources Report establishes notice of the widespread acts necessitating training of Dorvil and others.  Similarly, the Court will not credit this allegation because Plaintiff fails to indicate what these acts were or how they would have placed the County on notice of a need to train with regard to the use of force against children.

against the County, Count IV and Count V, are dismissed WITHOUT PREJUDICE with leave to amend one last time.  The Court notes that its dismissal of Plaintiff's federal law claims without prejudice and with leave to amend is subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure.  If Plaintiff elects to file a Second Amended Complaint, it must do so on or by April 3, 2011.

      DONE and ORDERED in Chambers, Miami, Florida, on March 22, 2011.

                                        Paul C. Huck
                                        United States District Judge

Copies furnished to:
Counsel of Record